TITLE GUARANTY & SURETY CO. v. BAGLIN.

(Circuit Court of Appeals, Third Circuit. December 4, 1909.)

No. 55.

1. TRUSTS (§§ 30½, 257*)—CREATION OF EXPRESS TRUST—RIGHT TO SUE.

H. and L., desiring to borrow money, arranged for a loan from a trust company to be secured by the joint note of L. and plaintiff, who was H.'s secretary, and who acted for H. throughout, by the deposit of certain share of stock as collateral thereto, which was the property of H., but was placed in plaintiff's custody for the purpose of the loan; a contract separate from the note being made between L. and plaintiff, by which L. was to receive $75,000 worth of matured government bonds on executing to plaintiff a surety bond to return the bonds on or before the date the note matured. Held, that plaintiff was a trustee of an express trust for H. to carry out the transaction, and such bond having been executed, and default having been made by L., plaintiff was entitled to recover on the bond in his own name, and was not required to sue to the use of H.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 41, 364; Dec. Dig. §§ 30½, 257.*]

2. PRINCIPAL AND SURETY (§ 97*)—OBLIGATION OF SURETY—DISCHARGE.

Plaintiff, acting for H., executed a joint note with L. for a loan for their several benefit, under plaintiff's agreement to give L. out of the proceeds of the loan matured government bonds to the amount of $75,000

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on condition of receiving a surety bond to return the bonds after or before the maturity of the note. Defendant executed such bond on condition that on a specified date L. would return the bonds to plaintiff, and the lender having refused to renew the joint note of plaintiff and L. on the same terms, and L. being unable to return the bonds, new notes were executed by L. and H. secured by additional collateral deposited by H. *Held*, that the giving of the new note was no part of the transaction to secure which defendant's bond was given, and that defendant was not discharged thereby from liability for L.'s failure to return the bonds.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 146–154; Dec. Dig. § 97.*]

**8.** PRINCIPAL AND SURETY (§ 42*)—DEFAULT—GOOD FAITH—ANTECEDENT FACTS —DISCLOSURE.

Plaintiff, acting for H. and L., desiring to borrow money, it was agreed to discount their joint note with a trust company secured by stock belonging to H. deposited by plaintiff, and that for L.'s share of the loan he was to receive matured government bonds on his delivery to plaintiff of a surety bond to return the bonds on or before the maturity of the note. *Held*, that the note to the trust company and the surety bond were distinct transactions, and that on receiving the surety bond plaintiff owed to the surety thereon no obligation to disclose the facts relating to the note, including the arrangement for a division of the proceeds.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 86–90; Dec. Dig. § 42.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Action by George Baglin against the Title Guaranty & Surety Company. Judgment for plaintiff (166 Fed. 356), and defendant brings error. Affirmed.

See, also, 178 Fed. 689.

Alexander Simpson, Jr., for plaintiff in error.

Dean Emery, R. Stuart Smith, and C. E. Morgan, for defendant in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. Judgment was entered against the plaintiff in error, as defendant in the court below (and hereinafter called the defendant), at the suit of the defendant in error (hereinafter called the plaintiff), on a contract of suretyship, and to this judgment a writ of error was sued out by the defendant. The status of the case in the court below is thus stated by the learned trial judge, in the opening paragraphs of his opinion (166 Fed. 356):

"At the close of the trial in this case, it was agreed by the parties that no questions called for submission to the jury. This agreement was equivalent to a request that the facts should be found by the court (Beuttell v. Magone, 157 U. S. 154 [15 Sup. Ct. 566, 39 L. Ed. 654]), and, accordingly, what amounted to a provisional finding was made by directing a verdict for the plaintiff, while control over the whole subject was retained by following the excellent Pennsylvania practice and taking the verdict subject to the reserved question of law, whether there was any evidence to go to the jury in support of the plaintiff's claim. A detailed finding of the facts is now made as follows:"

A brief summary of these findings of fact, which are not challenged, suffice for our present purpose.

Garrett B. Linderman and F. Augustus Heinze, both desiring money, entered into negotiations in regard thereto. It was arranged that

a loan of $200,000 should be obtained on their joint account from the Metropolitan Trust Company of New York, of which Heinze was to get $125,000 and Linderman $75,000. The loan was to be secured by the joint note of Linderman and George Baglin, the plaintiff, who was Heinze's secretary and who acted for Heinze throughout the whole transaction, and by the deposit of 6,700 shares of United Copper common stock as collateral thereto, which was the property of Heinze but placed in the custody of the plaintiff for the purpose of said deposit and for use in the negotiation of said note with the trust company. The plaintiff thereafter, in pursuance of the trust thus confided to him by Heinze, entered into a written agreement with Linderman, dated June 19, 1907, as follows:

"I. Mr. Linderman requests Mr. Baglin to cause to be deposited with the Metropolitan Trust Co. of New York, 6,700 shares of United Copper common stock as collateral for the joint note of the parties hereto of $200,000, about to be discounted with said trust company, payable September 26, 1907.

"II. Mr. Linderman also requests Mr. Baglin to procure for him out of the proceeds of this loan $75,000 and Mr. Linderman agrees to repay the said sum to Mr. Baglin on September 26, 1907, with interest at 6 per cent.

"III. In further consideration of the foregoing Mr. Linderman agrees that he will, on or before June 27, furnish to Mr. Baglin a bond in form satisfactory to Mr. Baglin, executed by the People's Surety Co., guaranteeing the repayment to Mr. Baglin of the said $75,000, with interest, at the said date, and of any part thereof which Mr. Linderman may receive.

"IV. In consideration of the foregoing, Mr. Baglin agrees that he will forthwith loan to Mr. Linderman out of the proceeds of the loan from the trust company, when made, the sum of $15,000 upon Mr. Linderman's one day note, and that he will, as soon as the foregoing bond is furnished, loan him the additional sum of $60,000. Upon giving said bond the one day note shall be cancelled and the entire $75,000 shall be repayable to Mr. Baglin on September 26, 1907, with interest at 6 per cent."

As found by the court below, in this transaction and those that followed, the plaintiff had no pecuniary interest, "although he acquired legal rights thereby and assumed legal obligations." As the note to the trust company was to be the joint obligation of Linderman and Baglin, and was to be secured by the collateral deposited by Baglin, it was provided that Linderman should protect Baglin by furnishing the security of a surety company, that the $75,000 should be repaid in time to meet his (Linderman's) share of the note. He agreed, therefore, that he would furnish a bond of the People's Surety Company, guaranteeing the payment of $75,000 at the proper date. This he was unable to do, because the surety company declined to give a bond in that form, apparently holding the opinion that it could not lawfully become surety for the repayment of money. Meanwhile the contemplated note of $200,000 had been signed by Baglin and Linderman, the copper stock had been deposited with the trust company as collateral security, the money had been paid over to Baglin, and he had advanced to Linderman the $15,000 referred to in article 4 of the agreement. Heinze received his share of the loan, but at what time does not appear and is not important.

To overcome the supposed difficulty of obtaining the bond of a surety company, guaranteeing the repayment of money, the agreement of June 19th was modified on July 17th, by a further agreement in writ-

ing between the said parties, so that the plaintiff, instead of loaning $75,000 cash to Linderman, was to purchase $75,000 of United States government bonds, known as "Old 4's," redeemable on and after July 1, 1907. Such bonds, of course, were equivalent to cash, as the money could be obtained for their face value on presentation at the United States Subtreasury in New York, in which city this business was being transacted. By paragraph 5 of said modified agreement, it is provided as follows:

"V. It is hereby mutually agreed that in case a renewal or extension of the loan of $200,000 from the Metropolitan Trust Co., referred to in paragraph I of the aforementioned agreement, shall be obtained, then the obligation of Mr. Linderman hereunder to return said bonds, as heretofore set forth, shall be likewise extended for the same period, provided, however, and only upon the express condition, that Mr. Linderman shall furnish to Mr. Baglin the consent of the surety company or surety companies executing undertakings for the return of said government bonds, as heretofore provided, in writing in a form satisfactory to Mr. Baglin, to the extension of Mr. Linderman's time to return the said bonds, and shall agree in such written consent that such extension shall in no wise impair or affect the liability of such company or companies upon such undertakings."

On or before July 17th, the Southern Surety Company had given such an obligation as was contemplated by this agreement, guaranteeing the return of $45,000 of the bonds, leaving $30,000 still unprovided for. In a paper signed July 17, 1907, by both Linderman and the plaintiff, Baglin, the latter agrees that the remaining $30,000 par value of bonds of said description will be procured and loaned by him to Linderman when he, Linderman, provides a further undertaking from a satisfactory surety company for the return of said additional $30,000 of said bonds, as provided in their said agreement. Baglin also represents therein that it was his "desire and intention" at the time when said bonds would be returnable, pursuant to said agreement, to accept from Linderman the face value of said bonds, in cash, with interest at 6 per cent., in lieu of the return of the bonds themselves. On July 23d, the defendant company, upon the application of Linderman, became his surety in a bond to the plaintiff, in the sum of $30,000, which, after reciting the loan of the said $30,000 in United States bonds by the plaintiff to Linderman, to be returned September 26, 1907, contained a condition in the usual form for the return of said bonds by Linderman, on or before the time stipulated in his said agreement with the plaintiff. This is the bond in suit, and it was delivered by Linderman to the plaintiff in New York City, and at the same time the plaintiff delivered to Linderman United States 4's to the par value of $30,000, and these were sold by Linderman and the proceeds used for his own purposes. At the agreed date in September, their return was duly demanded by the plaintiff, but Linderman was unable to comply, as appears by his written acknowledgment signed on September 26th. In this writing, Linderman "likewise admits that, in view of the fact that the Metropolitan Trust Co. will not continue the loan referred to in the agreements, dated June 19, 1907, and July 17, 1907, between him and Mr. Baglin, except upon a deposit of further collateral and an additional endorsement, such continuation of that loan upon such terms is not a renewal or extension of the original loan

such as was contemplated by him and Mr. Baglin in paragraph V of the agreement of July 17, 1907, and does not entitle him to an extension of his time to return said government bonds as provided in the paragraph in question."

As appears from this paper, the Metropolitan Trust Company would not continue the loan upon the same terms as were granted on June 17th, and the result was that the two new notes, aggregating $200,000, were given to that company by Linderman and Heinze jointly, the latter depositing 3,300 additional shares of copper stock as further security. The note given on June 17th, by Linderman and Baglin, was thereupon surrendered and marked paid, and Baglin's connection with the transaction came to an end, except so far as his relation to the present suit is concerned.

Upon these findings of fact the conclusions of law are clearly, and we think correctly, stated by the trial judge, and it is only necessary to notice certain contentions that were very strongly urged before us by the counsel for the plaintiff in error. These contentions are:

(1) That there can be no recovery, in view of the fact that plaintiff suffered no loss, and a use plaintiff, even if named, which he is not, could recover only on the legal plaintiff's right.

(2) That the renewal of the $200,000 loan, with a new obligor instead of plaintiff, and additional collateral without defendant's consent, discharged it as a surety.

(3) That plaintiff, as principal, did not act towards this defendant as surety, with that good faith which the law requires.

In support of these propositions, the history of the transaction between Heinze and Linderman, resulting in the loan made by the Metropolitan Trust Company, on the note of Linderman and the plaintiff, as representative of Heinze, and the stock of Heinze deposited as collateral, is dwelt upon, and the subsequent agreement by Baglin, to hand over to Linderman $75,000 out of the proceeds of said note, upon condition that he, Linderman, furnish the bond of a surety company for the return of said amount, in time to be available towards the payment of the note at its maturity, is sought to be connected therewith. It is then insisted that the bond in suit was so related to these several transactions, as to make it incumbent upon the plaintiff to have made a full disclosure of them to the defendant company at the time of the giving of the bond. In other words, that, as it was the real understanding between plaintiff and Linderman, that the bonds were to be returned as so much cash with reference to the payment of the note at its maturity, the payment of that note in some way inhered in the condition of the bond, so that if the note was paid or discharged by another note, to which the plaintiff was not a party, plaintiff had suffered no loss and therefore could not recover.

It is. therefore contended that, as Heinze was the real party in interest, and the plaintiff had no pecuniary interest but was simply the agent of Heinze in the transactions above recited, plaintiff was not entitled to maintain, in his own name, the action against the defendant on the bond. The court below disposes of this objection by saying that:

"Assuming it to be well taken, it is a defect that may be remedied by amendment after a trial on the merits, and permission is hereby given to amend the record within ten days, by marking the suit and the various papers in the cause to the use of F. A. Heinze, and by inserting the proper averments concerning his citizenship."

Counsel for plaintiff properly refused to avail himself of this permission.

Baglin was the legal plaintiff in the case, and as such, the real plaintiff. He was the obligee named in the bond, and no one else than he could properly have been plaintiff, or maintained an action thereon. His relation to Heinze, disclosed by the evidence in the case, and Heinze's interest in the transactions, which have been recited, could in no wise alter or affect the right of plaintiff to bring this suit, or the legality of his status as plaintiff. Plaintiff's relation to Heinze was, it is true, a fiduciary one, but, in pursuance of the express trust imposed on him by that relation, he became invested with the legal title to the bond in question, as the obligee named therein, and Heinze must look to him to assert, by action at law, the rights growing out of that obligation. If the plaintiff either neglects to properly assert those rights, or to account to Heinze for the fruits of any legal proceedings upon said bond, Heinze has his remedy to compel the former and to require an account for the latter. There can be no doubt that, upon the default of Linderman, the liability of the defendant company upon the bond would have been discharged by the return of the government securities mentioned therein, to the plaintiff. Baglin is not simply a nominal plaintiff, through whom and by the use of whose name a beneficial plaintiff may institute a suit. He is a legal plaintiff, possessing a remedial interest, made such by being the named obligee in a sealed instrument, and the only effect of the evidence as to his relation to Heinze would be to constitute him, as such obligee, the trustee of an express trust. We believe it has never been held at common law or required by statute, that such a trustee may not bring suit in his own name, in pursuance of the duties imposed upon him by the trust, and no marking of the suit to the use of the cestuis que trust is necessary to the exercise of his legal right.

In this view, defendant is not in a position to assert that no loss has accrued to the plaintiff. The bond sued upon is not an indemnity bond. Defendant is bound, as surety or guarantor, to the plaintiff, as obligee in the bond, and, in the words of the trial judge, "the fact remains that the guarantee in question was given and paid for; that it warranted the performance of a lawful act, and that such act has not been performed," and by its nonperformance, defendant's liability is fixed.

There is nothing disclosed by the record to support the second of the above contentions, viz.:

"That the renewal of the $200,000 loan, with a new obligor instead of plaintiff, and additional collateral, without defendant's consent, discharged it as a surety."

Plaintiff in error's argument rests on the unwarranted assumption, that there was a contractual or legal nexus between the transactions of Linderman and Heinze, or Baglin as Heinze's representative, with

the Metropolitan Trust Company, in regard to the discount of the $200,000 note, and the giving of the bond by defendant to the plaintiff. In legal contemplation, these were independent transactions. The making or not making of a contract between Baglin and Linderman, for the loan of $75,000, had nothing to do with the negotiation of the note. This contract was merely the result of an arrangement between Heinze and Linderman, as to the division of the proceeds of the note, and the giving by Linderman of security for the return of his share thereof to Heinze, in order to enable Heinze to take up the note at its maturity, for the payment of which he had deposited a large collateral. It seems obvious that the defendant company, as surety for Linderman's undertaking to return these bonds, or the cash equivalent thereof, was not directly affected by the note transaction, or by the arrangement between Linderman and Heinze, prior to the giving of the bond, and it has no interest, except an indirect and remote one, in this antecedent and independent transaction. The defendant was not surety for the payment of the note, and incurred no legal obligation, either by its payment or nonpayment. It is averred by plaintiff in error that it had no knowledge, and was not informed, of those antecedent occurrences. It had no occasion to be. It was correctly advised in not concerning itself with any matters outside of the clear stipulations of its contract and the measure of the liability imposed thereby upon it in distinct and unequivocal terms. It is true that, in a certain sense, the giving of the bond grew out of the antecedent occurrences referred to, but these occurrences were only antecedents to the bond in question, in the general sense that they constituted the occasion and motive for the transaction in question. They were not antecedents in a juridical sense. The renewal, therefore, of the note of Baglin and Linderman to the Metropolitan Trust Company, or the substitution therefor of a new note by Linderman and Heinze, and the collateral deposited by Heinze, in addition to that which he had already staked on the original note, were matters which in no way affected the liability of the defendant on its bond. The contract between the surety company and Baglin bore no legal relation to the note transaction, nor is there any equitable relation between the parties requiring notice of this court. No extension of time was given to Linderman, the principal in the bond, and he expressly admits that he was not entitled to such extension by the giving of the new notes. He had become liable as such principal by his default in returning the United States 4's, or their equivalent in cash, at the time stipulated for such return, and could have been sued immediately on such liability.

But all question as to the supposed effect of the new notes, in giving an extension of time to Linderman on his bond, is set at rest by the express stipulation of paragraph 5 of the written agreement of July 17th, between plaintiff and Linderman, as above recited.

What has been already said, we think disposes of the third contention above recited, viz.:

"That plaintiff, as principal, did not act towards this defendant as surety, with that good faith which the law requires."

The argument in support of this contention is, that good faith required Baglin, upon receiving the bond of the defendant delivered to him by Linderman, to make full disclosure to it of all the facts in relation to the note transaction between Linderman and Heinze and the Metropolitan Trust Company, including the subsequent arrangement between them, as to the division of the proceeds of that note.

The reasons already given for considering the bond in question independent of these transactions, are sufficient to negative the contention that good faith imposed upon the plaintiff any duty to make any disclosure in the premises, other than was made.

It is unnecessary to further extend this opinion, as these points, and such others as were made in argument by the plaintiff in error, are fully and satisfactorily covered by the opinion of the court below, whose judgment is hereby affirmed.