## NATIONAL SURETY CO. v. LINCOLN COUNTY, MONT.

(Circuit Court of Appeals, Ninth Circuit. January 8, 1917. Rehearing Denied February 13, 1917.)

No. 2825.

1. APPEAL AND ERROR ☜241—REVIEW—MOTION FOR JUDGMENT.
    Review of denial of motion for judgment is limited to the specific questions presented on the motion.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1413–1416; Dec. Dig. ☜241.]

2. APPEAL AND ERROR ☜671(6)—RECORD—QUESTIONS PRESENTED FOR REVIEW.
    A general finding being made on a trial without a jury, review is limited to such rulings in the progress of the trial as are presented by bill of exceptions.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2872; Dec. Dig. ☜671(6).]

3. PLEADING ☜345(1)—MOTION FOR JUDGMENT—CLERICAL ERROR IN BOND.
    The complaint in an action on a bond to secure performance of a contract will not be held insufficient, on defendant's motion for judgment, because, as appears by the exhibits, the bond antedates the contract by a year, the complaint showing the contract to be a modification of one a year earlier, and the bond showing that it was given after the making of, and to secure performance of, the modified contract; but the date of the bond will be disregarded as a clerical error in copying the bond for the original contract.
    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1055, 1057–1059; Dec. Dig. ☜345(1).]

4. PLEADING ☜7—PRESUMPTION—VIOLATION OF LAW.
    Plaintiff, suing on the bond of the contractor for construction of a bridge over a navigable stream, need not allege and prove that its con-

struction was with the approval of its plans required by Act March 23, 1906, c. 1130, 34 Stat. 84 (Comp. St. 1913, §§ 9961–9968); as it will not be presumed it was an unlawful structure.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 11; Dec. Dig. ⊙⇒7.]

b. NAVIGABLE WATERS ⊙⇒1(7)—EVIDENCE OF NAVIGABILITY.

That Congress passed an act authorizing the construction of a bridge in accordance with the act as to bridging navigable streams does not of itself establish navigability of the stream, in an action on the bridge builder's bond.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 12–15; Dec. Dig. ⊙⇒1(7).]

6. PRINCIPAL AND SURETY ⊙⇒117—DISCHARGE OF SURETY—PREMATURE PAYMENTS.

A contractor's surety, at least a compensated surety, whether a company or individual, to be discharged by payments to the contractor before the stipulated times, must show that it suffered some injury therefrom.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 283–285; Dec. Dig. ⊙⇒117.]

7. PRINCIPAL AND SURETY ⊙⇒90—DISCHARGE—APPLICATION OF STATUTE.

Act Mont. March 10, 1909 (Laws 1909, c. 139) § 3, providing how a surety company may be released from liability on a bond, having reference only to official bonds, has no application to the bond of a contractor for construction for a county.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 140; Dec. Dig. ⊙⇒90.]

8. PRINCIPAL AND SURETY ⊙⇒117—DISCHARGE—CONSTRUCTION OF STATUTES.

The second and third subdivisions of Rev. Codes Mont. § 5686, providing that a surety is exonerated, (1) in like manner with a guarantor, (2) to the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security, or (3) to the extent to which he is prejudiced by an omission of the creditor to do anything, when required by the surety, which it is his duty to do, are controlling, notwithstanding section 5673, providing that a guarantor is exonerated, except so far as indemnified by his principal, if by any act of the creditor, without the guarantor's consent, the obligation of the principal is altered in any respect; so that a surety is not released by premature payments to his principal, whereby the surety could not be injured.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 283–285; Dec. Dig. ⊙⇒117.]

9. APPEAL AND ERROR ⊙⇒931(4)—PRESUMPTION—FINDINGS.

It must be assumed, on appeal from the general finding for plaintiff suing a contractor's surety, that the court found that deviations from plans and specifications were not at the instance of plaintiff, or that they were such as were permissible under the terms of the contract.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3764; Dec. Dig. ⊙⇒931(4).]

10. PRINCIPAL AND SURETY ⊙⇒159—BUILDING CONTRACT—EVIDENCE TO HOLD SURETY.

Notwithstanding any difference between the bridge described in the bond of a contractor for building a bridge, and that described in the specifications, the surety, sued on the bond because of the fall of the bridge constructed, is properly denied judgment; there being no evidence to show which of the two described bridges was constructed.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 428–435; Dec. Dig. ⊙⇒159.]

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

11. **PRINCIPAL AND SURETY** ⬳90—RELEASE—GROUNDS.

Though a contract for constructing a bridge for a county provides that certain work shall be done if ordered by the engineer, yet there being no provision requiring the county to be represented by an engineer, the fact that it had none does not release the contractor's surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 140; Dec. Dig. ⬳90.]

In Error to the District Court of the United States for the District of Montana; Geo. M. Bourquin, Judge.

Action by the County of Lincoln, Montana, against the National Surety Company. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 231 Fed. 468.

Clarence H. Gilbert, of Portland, Or., Gunn, Rasch & Hall, of Helena, Mont., Edmund C. Strode, of Lincoln, Neb., and Coy Burnett, of Portland, Or., for plaintiff in error.

J. B. Poindexter, Atty. Gen., W. H. Poorman, Asst. Atty. Gen., and Sidney M. Logan, of Kalispell, Mont., and James M. Blackford, of Libby, Mont., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The defendant in error entered into a contract with the Coast Bridge Company, whereby the latter was to construct a bridge across the Kootenai river at Rexford, Mont., a swift mountain stream more than 400 feet wide. The bridge was to be for highway purposes, to be 18 feet in floor width, to consist of two spans each 220 feet long, supported by a central pier. The bridge company agreed to provide all material and labor and to build the bridge in a good, workmanlike, and substantial manner, "so as to make it a perfect bridge, according to the plans and specifications." The bridge company was to furnish the plans and specifications. The bridge was completed and paid for late in the fall of 1912, and early in the spring of 1913 the central pier was undermined so that it overturned and the bridge fell. The loss was total. The defendant in error brought an action against the bridge company and the National Surety Company, the plaintiff in error, to recover the sum of $30,000, the penal sum of the surety company's bond. The case was tried before the court, a jury trial having been waived. The court reached the conclusion that the piles of the center pier were not driven in accordance with the contract, and that because thereof the pier and the bridge fell, and made a general finding for the defendant in error, and entered judgment for $29,345 with interest and costs. No special findings were requested by either party. At the conclusion of the testimony, the plaintiff in error moved for judgment in its favor, not on the ground that there was no evidence sufficient in law to sustain a judgment for the defendant in error, but upon the alleged insufficiency of the complaint to state a cause of action, and upon certain specified

grounds on which it was contended that the plaintiff in error was discharged of liability upon its bond.

[1, 2] On this writ of error we are limited to the consideration of the specific questions which were presented on the motion for a judgment. It is well settled that if a jury trial is waived, and a general finding is made by the court, review in an appellate court is limited to such rulings of the trial court in the progress of the trial as are presented by a bill of exceptions. In Dunsmuir v. Scott, 217 Fed. 200, 133 C. C. A. 194, this court said:

"The question whether or not, at the close of the trial, there is substantial evidence to sustain a finding in favor of one of the parties to the action, is a question of law which arises in the progress of the trial. Where the trial is before a jury, that question is reviewable on exception to a ruling upon a request for a peremptory instruction for a verdict. Where the trial is before the court, it is reviewable upon a motion which presents that issue of law to the court for its determination at or before the end of the trial."

See, also, Mason v. Smith, 191 Fed. 502, 112 C. C. A. 146; National Surety Co. v. United States, 200 Fed. 142, 118 C. C. A. 360; New York Life Ins. Co. v. Dunlevy, 214 Fed. 1, 130 C. C. A. 473; Tiernan v. Chicago Life Ins. Co., 214 Fed. 238, 131 C. C. A. 284.

[3] One ground on which it is contended that the complaint fails to state a cause of action is that the contract therein presented as an exhibit bears date February 5, 1912, whereas the bond which is also presented as an exhibit bears date February 20, 1911, and in the body of the complaint it is alleged that the contract was entered into on December 18, 1911. But the complaint alleges, also, that during the month of February, 1912, the defendant in error and the Coast Bridge Company made certain modifications of the specifications, attached to and made a part of such contract, "a copy of which contract, together with the changed and modified specifications thereunto annexed and made a part of the same, is hereto annexed, marked 'Exhibit A,' and made a part of this complaint." And it alleges that the bond was conditioned upon the bridge company's compliance with all the terms, conditions, and provisions in said contract, and the changed and altered plans and specifications mentioned. The discrepancy between the date which the contract bears and the date of the bond alleged in the complaint was not called to the attention of the court below. The contract of December 18, 1911, and plans and specifications referred to therein, were introduced in evidence without objection. Pursuant to a stipulation of the parties, permission was granted to amend the complaint by alleging that the original contract was made on December 18th, and the agreement modifying the same on February 5, 1912. The plaintiff in error then interposed a general objection to the introduction of any evidence in support of the complaint as amended, upon the ground that the complaint did not state facts sufficient to constitute a cause of action. It appears from the opinion that this objection was for the "purpose of the record," and that no defect in the complaint was pointed out. The court overruled it "as of a class disfavored, in that it tends to defeat justice rather than to promote it," and stated that if the complaint was defective an amendment

would be allowed, and "if necessary the amendment is deemed made to conform to proof." The case went to trial on the understanding of all parties, so far as the record discloses, that the bond sued upon was the bond given for the performance of the contract under which the bridge was constructed; and the bond on its face shows that it was given to secure the performance of that contract. It refers to the contract of December 18, 1911, to the bond which the bridge company had given for the performance thereof, to the fact that the original contract had been changed and altered, and a new contract had been made in accordance with the changed plans and specifications, and to the fact that the county commissioners had ordered that a new bond be given, and then it declares that the Coast Company and its surety undertake that the principal therein shall faithfully and truly observe and comply with all, the terms of the contract as altered. The fact that the bond which was then executed bore date December 20, 1911, must be disregarded as a clerical error which resulted from inadvertence in copying the previous bond.

[4, 5] One ground of the motion of the plaintiff in error was that there was neither allegation nor proof that approval of the plans and specifications for the bridge, or permission for its construction, had been obtained from the War Department. In this connection, it is contended, also, that the complaint was insufficient for failure to allege that said permission and approval were had. In the original contract between the defendant in error and the bridge company, it was stipulated that the contract should not take effect until the War Department "has approved the plans and specifications and granted permission for the construction of said bridge." In the contract of February 5, 1912, that stipulation was omitted. An act of Congress was duly passed authorizing the construction of the bridge, the same to be built in accordance with the act of Congress of March 23, 1906 (34 Stat. 84), an act which requires that a bridge over navigable waters, authorized by Congress, shall not be built until the plans have been approved by the Secretary of War and the Chief of Engineers, and provides that any person who shall be guilty of a violation thereof shall be deemed guilty of a misdemeanor and on conviction shall be punished by a fine. The prohibition is against persons constructing or commencing to construct bridges without complying with the requirements of the statute. The act defines "persons," as therein used, to include "municipalities, quasi municipal corporations, corporations, companies, and associations." The complaint contains no allegation that the plans and specifications upon which the bridge was constructed were approved by the War Department, and there is no proof to that effect. No objection was interposed on that account during the progress of the trial, and no mention was made of that omission until the motion was made by the plaintiff in error for a judgment in its favor.

The court below in denying the motion was of the opinion that, since the contract to construct the bridge had been performed, it must be presumed that it was lawfully performed, and that the necessary approval was had, and that the obligation to secure the ap-

proval rested upon the contractor as much, if not more than upon the county, that the surety engaged that its principal would lawfully perform, and that, if the latter unlawfully performed its contract, the surety was not discharged. In so ruling we think the court below committed no error. We think that it should be presumed that, when the bridge company began the construction work, it had determined, as it was its duty to do, that the conditions upon which it could lawfully proceed had been complied with. There is nothing in the record to suggest even remotely that this was not done, and we may assume that if, in fact, it was not done, the plaintiff in error would have availed itself of that defense by pleading it in its answer. Moreover, there is no evidence in the record that the Kootenai river was a navigable stream at the place where the bridge was constructed, or elsewhere. The fact that Congress passed an act authorizing the construction of the bridge does not of itself establish the navigability of the stream.

The plaintiff in error relies upon Texarkana & Ft. S. Ry. Co. v. Parsons, 74 Fed. 408, 20 C. C. A. 481, in which it was held that those who seek to justify the erection or maintenance of a bridge across a navigable river, which obstructs its navigation, upon the ground that Congress authorized its erection and maintenance, must show that it was constructed and is maintained in accordance with the requirements of the act of Congress. In that case it was conceded that the bridge had not been constructed in accordance with the specified requirements of the War Department. Undoubtedly, if the defendant in error here had been sued for damages to a vessel, caused by collision with the pier of the bridge, and the plaintiff had alleged, as did the plaintiff in his complaint in the Texarkana Case, that the bridge was an unlawful structure, the defendant in error would have been required to allege and prove that it was built in accordance with the requirements of the War Department. But that is not the present case. Whether the bridge across the Kootenai was a lawful structure is not a question involved in the action. The question is whether the surety is liable for damages for the loss of a bridge which has been constructed presumably with the surety's knowledge of all the preliminary facts. The act of constructing a bridge without the approval of the War Department is malum prohibitum and not malum in se, and a court would be going far if it indulged the presumption, in the absence of proof, that the bridge in question was unlawfully constructed.

[6-8] We find no error in the refusal of the trial court to render judgment for the plaintiff in error on the ground that it was released and relieved from liability by reason of the premature payments on the contract. The contract provided that 25 per cent. of the contract price should be paid upon completion of the concrete piers, 50 per cent. upon the arrival of the steel for the bridge at the bridge site, and the remainder upon the completion and acceptance of the bridge. It was shown that under a resolution of the county commissioners of July 26, 1912, one-half of the contract price was paid in advance of the arrival of any of the materials, or the performance of any work, and that an additional $12,500 was paid before the central pier was constructed,

and that these payments were made by the issuance and delivery of county warrants. It is not shown that the plaintiff in error was injured, or could have been injured or prejudiced, in any way, by these advanced payments. The case is to be distinguished from those which arise under building contracts for structures upon which liens may be placed. In 32 Cyc. 223, it is said:

"And if a payment by the owner does not impair any security to the benefit of which the surety is entitled, the latter is not discharged."

The plaintiff in error was a compensated surety. As to such sureties, the strictness of the old rule has been relaxed, and it is now held that such a company must show that it suffered some injury by reason of the alteration of the terms of the contract before it can be discharged from its liability. Williams v. Pacific Surety Co., 77 Or. 210, 146 Pac. 147, 149 Pac. 524; Leiter v. Dwyer Plumbing Co., 66 Or. 474, 133 Pac. 1180; Manhattan Co. v. United States F. & G. Co., 77 Wash. 405, 137 Pac. 1003; Atlantic Trust & Deposit Co. v. Laurinberg, 163 Fed. 690, 90 C. C. A. 274; Baglin v. Title Guaranty & Surety Co. (C. C.) 166 Fed. 356, affirmed in 178 Fed. 682, 102 C. C. A. 182; United States Fidelity & Guaranty Co. v. United States, 178 Fed. 692, 102 C. C. A. 192; Pittsburg-Buffalo Co. v. American Fidelity Co., 219 Fed. 818, 135 C. C. A. 488; American Bonding Co. v. United States, 233 Fed. 364, 147 C. C. A. 300; Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242. And such is the rule in Montana as to all sureties whether compensated or not. Dodd v. Vucovich, 38 Mont. 188, 99 Pac. 296. In that case the court gave effect to section 5686, Revised Codes of Montana, which provided:

"A surety is exonerated: (1) In like manner with a guarantor; (2) to the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security; or (3) to the extent to which he is prejudiced by an omission of the creditor to do anything, when required by the surety, which it is his duty to do."

And the court said:

"In the absence of any showing that the surety was, or, indeed, could have been, injured or prejudiced by these changes, he was not released from liability."

The plaintiff in error contends that the effect of the Montana statutes is to give to surety companies in that state all "the rights and liabilities of private persons," and refers to section 3 of the act of March 10, 1909 (Session Laws of 1909, p. 209), which provides that:

"Such company may be released from its liability on a bond on the same terms and conditions that are by law prescribed for the release of individual sureties."

That section, however, relates only to the manner in which a surety may be relieved from an official bond, a manner which is specified in sections 403, 404, et seq., of the Montana Codes. It has nothing to do with sureties on construction contracts. Nor is the fact that in Montana surety companies are given all the "rights and liabilities" of private persons material to the present controversy. It should be con-

ceded that in Montana, as elsewhere, a private person, if he is a compensated surety, is to be dealt with under the rules which apply to a compensated surety company. But the plaintiff in error relies also upon section 5673, which provides:

"A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any wise impaired or suspended."

The contention is that, since under section 5686 a surety is exonerated in like manner with a guarantor, the strict rule of section 5673 is applicable here. We think, however, that the second and third subsections of section 5686 are controlling, and that such is the effect of the decision of the Supreme Court of Montana in the case above cited. It may be added that on the trial the defendant in error offered proof that the surety company had been indemnified by the bridge company. The testimony was excluded by the court, but there was received in evidence a letter of March 14, 1914, from the Assistant General Solicitor of the plaintiff in error to the attorneys for the defendant in error, stating that:

"This company was merely surety on the bond in question, and, of course, must be governed by the instructions and directions of its indemnitors in all matters arising under it."

[9] A ground on which the motion of the plaintiff in error was based was that the plaintiff in error was released and relieved from liability by reason of the change in the location of the central pier and the lowering of the floor of the bridge, which it is contended constituted material departures from the contract. The plaintiff is error in its answer made no defense that there had been variations, or that it was released thereby. The contract provided that should the county at any time order alterations, deviations, additions, or omissions not therein provided for, it should be at liberty to make the same; the expense to be added to or deducted from the amount of the contract price. McClayn, the superintendent of the bridge company, testified that Geary, one of the county commissioners, wanted the location of the bridge moved 16 feet, and that thereupon the center pier of the bridge was placed 16 feet nearer the Rexford side of the river than it was shown on the plan, and that the floor of the bridge was lowered 3 feet. Geary testified that the location of the central pier was changed at the instance of Whitlock, the president of the bridge company; that it was done at Whitlock's suggestion, to avoid the possibility of water cutting out the gravel around one of the piers; and that he (the witness) had nothing to do with the lowering of the floor. It is not shown, and it is inconceivable, that the mere lowering of the floor of the bridge 3 feet was a material alteration of the plans, and there is no evidence that the change of the position of the central pier enhanced the difficulty, peril, or expense of the construction. The only testimony on that subject is that of McClayn, who testified that it placed the pier that was not quite in the center of the river further out in the center, "and the river

swirling around this way would have a bigger sweep at the pier than it would have if it had been left 10 feet further away to the Rexford shore." We must assume, from the general finding of the court in favor of the defendant in error, that the court found, either that these deviations from plans and specifications were not made at the instance of the county, or that they were alterations such as were permissible under the terms of the contract.

[10] Another ground of the motion was that the bond refers to a contract for the construction of a "two-span riveted bridge, together with three concrete piers"; whereas, the bridge which was built was a "two-span pin connected bridge, with one concrete and two tubular piers," "by reason of which the surety company is not liable." The contention seems to be based upon the fact that the bond recites that the contract is for the erection complete of a "two-span riveted bridge together with three concrete piers," while the specifications call for two 220-foot pin connected spans for a superstructure, resting on one stream pier and two shore piers. The specifications were not explained by any witness, and it is not shown that there is any substantial difference, or, indeed, any difference at all between the bridges thus described. If there is a difference, the specifications being more specific, and being a part of the contract, should control. But, in any view, the motion was properly denied, for the reason that there was no evidence to show which of the two described bridges was constructed.

[11] Nor was it ground for releasing the surety that the plaintiff in error appointed no engineer or inspector to supervise the construction of the bridge. The contract twice mentions an engineer. It provides that the approaches to the span shall be of such length as the local engineer may designate. This evidently refers to a highway engineer, and his supervision of the roadways approaching the bridge. Again, it is provided that:

"After excavation is made to the full depth, piles shall be driven inside, if so ordered by the engineer."

This must have referred to an engineer of bridge construction, and it should be considered in connection with the undisputed testimony that the bridge company represented to the county:

"That they were competent bridge engineers, competent construction engineers, and that if pilings were necessary they would so advise us, and, if it were necessary to drive pilings, they would drive them."

But there was no provision requiring that the county be represented by an engineer, and the fact that the county had no such engineer tends in no degree to excuse the bridge company for its failure to carry out its contract.

We find no error in the denial of the motion of plaintiff in error for judgment.

The judgment is affirmed.