Argued October 16, modified November 24, rehearing denied December 31, 1914.

## HAMMER *v*. CAMPBELL GAS BURNER CO.

(144 Pac. 396.)

**Trial—Motion for Nonsuit—Requisites.**

1. A motion for judgment, made at the close of plaintiff's evidence, without any grounds therefor being stated, is insufficient as a motion for a judgment of nonsuit.

**Motions—Requisites—"Motion."**

2. A "motion," being an application to the court for relief of some kind, should state what relief is desired, and should ordinarily set forth the grounds for asking the relief.

**Pleading—Counterclaim on Note—Sufficiency.**

3. Allegations of a counterclaim that "a promissory note" in a certain sum "was executed in favor of and delivered to the defendant herein," on which a certain sum "remains due from the plaintiffs to

the defendant," without stating who executed the note, were fatally defective; the allegation that a certain sum was due from plaintiffs being a mere conclusion of law.

**Pleading—Certainty—Counterclaim.**

4. A counterclaim on a note should be pleaded with the same particularity required in a complaint on the note.

**Pleading—Variance—Counterclaim.**

5. Where a pretended counterclaim was defectively pleaded, evidence concerning it was properly excluded.

**Appeal and Error—Presentation for Review—Exclusion of Question.**

6. The exclusion of a question propounded to a witness cannot be reviewed by the appellate court, where the facts sought to be elicited by such question are not incorporated in the bill of exceptions.

**Appeal and Error—Presentation for Review—Exclusion of Documentary Evidence.**

7. The exclusion of a document from evidence cannot be reviewed by the appellate court, where the document or a copy thereof is not made a part of the bill of exceptions.

**Setoff and Counterclaim—Subject Matter of "Counterclaim"—Joint Note.**

8. A joint note executed to the defendant and signed by several parties, none of whom were plaintiffs and one of whom was not interested in the contract on which the suit was based, could not be the basis of a "counterclaim" under General Laws of 1911, page 144, providing that a counterclaim must be one in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action.

**Pleading—Counterclaim and Denial of Liability—Right to Plead.**

9. Under Section 74, L. O. L., prior to its amendment on June 3, 1913 (Laws 1913, p. 312), where the defendant in its answer denied entirely the demand of plaintiffs, or that it owed them anything, it could not plead a counterclaim.

**Pleading—Inconsistent Defenses—General Denial and Counterclaim—Statutes.**

10. The amendment of 1913 (Laws 1913, p. 312), to Section 74, L. O. L., relating to counterclaims, providing that defendant "shall" not be required to admit any liability or indebtedness to plaintiff in order to be allowed to plead a counterclaim, is prospective only, and does not affect an answer filed before it went into effect.

**Interest—Findings—Construction—"Matured Accounts."**

11. In a broker's action for commissions on the sale of corporate stock, a finding that, pursuant to a settlement made on March 4, 1910, when defendant accepted certain cash and notes as payment for the stock, commission in a certain sum "became and was earned and was due and payable on the maturity date of said notes," and "that all of the notes in these findings referred to * * have matured," without stating when the notes matured, entitled plaintiffs to interest on the amount of such commission only from the date of the findings, and

not from the date of such settlement; the settlement shown by the finding, not being a settlement of "matured accounts," within Section 6028, L. O. L., providing for interest on the settlement of matured accounts from the day the balance is ascertained.

[As to distinction between setoff, recoupment and counterclaim, see notes in Ann. Cas. 1914B, 119; 40 Am. Dec. 320; 89 Am. Dec. 482.]

From Multnomah: JOHN P. KAVANAUGH, Judge.

This is an action by Bertha E. Hammer, Harry G. Mourer, Jesse C. Luker and A. A. Cunningham, as trustee of Henry G. Sonnemann, et al., bankrupts, against the Campbell Automatic Safety Gas Burner Company, a corporation. From a judgment in favor of plaintiffs, defendant appeals. The facts are stated in the opinion of the court. Modified and remanded with directions.       MODIFIED.    REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. B. B. Crawford.*

For respondents there was a brief and an oral argument by *Mr. Robert J. Upton.*

Department 1.    MR. JUSTICE RAMSEY delivered the opinion of the court.

This is an action upon a contract to recover money due as commissions for selling corporate stock of the defendant company. On October 26, 1909, Henry G. Sonnemann, George C. Mourer, George R. Baker and George W. Morgan entered into a written contract for the sale of 6,000 shares of the capital stock of the defendant. Thereafter George R. Baker and George W. Morgan sold their interests in said contract to L. C. Hammer and H. G. Luker, and this transfer was consented to by the defendant. On November 18, 1911, H. G. Luker, H. G. Sonnemann, George C. Mourer, J. E. Murphy and L. C. Hammer were duly adjudged

to be bankrupt, by the District Court of the United States for the District of Oregon, and thereafter the plaintiff A. A. Cunnigham was appointed trustee in bankruptcy of the estates of said bankrupts, and he duly qualified as such trustee. Before the commencement of this action, said bankruptcy court made an order authorizing and directing said Cunningham, as trustee in bankruptcy, to join in bringing this action. After the execution of said written contract, and before the parties of the second part had sold any of said stock, the said parties and the defendant company entered into a parol agreement, by the terms of which said written contract was so modified that instead of the defendant company's selling to the parties of the second part and their assigns 6,000 shares of the capital stock of said company for the price stated in said written contract, said parties of the second part were given the sole right to sell and dispose of said 6,000 shares of the capital stock of the defendant company, and they were to sell said stock for $10 per share, and they were to pay the money or notes received for said stock to the defendant, and the defendant agreed that it would pay them, as commissions, for every share of said stock so sold, the sum of $3. The complaint alleges, in substance, the above-stated facts, and, also, that said Sonnemann, George C. Mourer, L. C. Hammer, and H. G. Luker did perform all of the terms and conditions of said contract as modified on their part to be done or performed, between October 26, 1909, and March 4, 1910, and sold for the defendant, under said contract as modified, 6,033 shares of the stock of the defendant company for $10 per share and turned over to the defendant, as the proceeds of such sales in cash and notes, the sum of $60,330; that said notes were

74 Or.—9

taken from the persons to whom said stock was sold and made payable to the defendant, and that the defendant accepted the same in payment therefor, with the express understanding and agreement on the part of the defendant that it would pay to Sonnemann, George C. Mourer, L. C. Hammer and H. G. Luker the difference between the said sum of $7 per share and the price at which said stock was sold, or $3 per share; that thereupon there became due and owing to them thereon the sum of $18,099 or $3 per share for the 6,033 shares of stock so sold, and that no part thereof has been paid, except the sum of $11,225.57. The complaint alleges, also, in substance, that after said commissions had become due and payable on the 28th day of June, 1910, said L. C. Hammer, for value, sold and assigned in writing to the plaintiff Bertha E. Hammer all his right and interest in and to any and all commissions and claim then held by him against the defendant for the sale of said stock and money due him from the defendant, and the said Bertha E. Hammer accepted said assignment, etc. On the 2d day of August, 1910, the said George C. Mourer, for a valuable consideration, assigned to Harry G. Mourer all his right and interest in and to all commissions held by him against the defendant for the sale of said stock, etc. The plaintiff Cunningham as trustee. in bankruptcy, is the owner and holder of the claim and demand that Sonnemann had against the defendant for his interest in the commissions for the sale of said stock. The plaintiffs demand judgment against the defendant for $6,873.43 with interest on said sum from March 4, 1910, that being the amount due after deducting all payments thereon. The answer admits parts of the complaint, and denies other portions thereof. The answer, also, sets up two alleged counterclaims.

The first supposed counterclaim is based upon a promissory note alleged to have been executed on the 10th day of November, 1910, to the defendant for $1,900 by L. C. Hammer, J. E. Murphy, H. G. Luker and H. G. Sonnemann. Said note purports to be due on demand, without grace. The other supposed counterclaim is alleged in said answer as follows:

"That the Safety Investment Company, a corporation of the State of Oregon, was organized as a close corporation during the year 1908 or 1909, the entire membership and ownership of the stock of said company being George C. Mourer, L. C. Hammer, H. G. Luker and Henry G. Sonnemann, the said just named parties owning the entire capital stock of the said corporation, and the said corporation being formed by the said parties for the sole purpose of exploiting and handling the sale of stock of the defendant herein, and perhaps other corporations as well. That afterward, to wit, during the months of May or June, 1909, and while said close corporation was composed entirely of the plaintiffs herein, and on the 2d day of June, 1909, a promissory note in the sum of $18,170 was executed in favor of and delivered to defendant herein, and after the maturity of the said note, which was prior to October 26, 1909, the sum of $3,385 was paid thereon by the makers thereof only, and there now remains due from the plaintiffs herein to the defendant the sum of $14,785. That, by mistake and without authority, the said note was marked 'Canceled' by a committee appointed by defendant to see what could be done in the way of collection of the said note, while as a matter of fact the said sum of $3,385 is the total amount paid by plaintiffs to defendant upon said promissory note, and there still remains due upon said note the said sum of $14,785."

The reply denies much of the new matter of the answer, and alleges, etc.:

"That heretofore, and on or about the 18th day of November, 1911, an order was duly made and entered

by the District Court of the United States for the District of Oregon in the matter of H. G. Luker, H. G. Sonnemann, George C. Mourer, J. E. Murphy, and L. C. Hammer, bankrupts, adjudging the said H. G. Luker, H. G. Sonnemann, George C. Mourer, J. E. Murphy, and L. C. Hammer bankrupt, and thereafter and on or about the 29th day of November, 1911, at a duly and regularly called meeting of the creditors of said bankrupts, the above-named plaintiff, A. A. Cunningham, was duly and regularly elected trustee of said bankrupts, and thereafter duly qualified as such trustee in the manner provided by law, and ever since said date has been and now is the duly acting and qualified trustee of said bankrupt estate. That said bankrupt proceeding since the date above mentioned has been and now is pending in the said District Court of the United States for the District of Oregon. That prior to the execution and delivery of the note set out in the further second and separate answer and by way of counterclaim or setoff of the defendant herein, the said L. C. Hammer and George C. Mourer, for a valuable consideration, sold, assigned and transferred their claim under the contract alleged in plaintiffs' complaint herein to Bertha E. Hammer and Harry G. Mourer, respectively, and that the defendant corporation was duly notified and had notice thereof at the time of the making of said assignments as alleged in plaintiffs' complaint, and that by reason thereof the defendant cannot claim a setoff or counterclaim against the rights of the plaintiffs Bertha E. Hammer and Harry G. Mourer.''

This cause was tried without a jury, and the trial court made findings and entered a judgment in favor of the plaintiffs for the amount demanded in the complaint. The defendant appeals.

1, 2. The first assignment of error is that the ''court erred in refusing to grant judgment of nonsuit.'' On page 13 of the bill of exception, we find that the plaintiffs rested, and ''thereupon defendant moved for judg-

ment, which motion was overruled, and defendant allowed an exception.'' The defendant appears to have ''moved for judgment,'' but he does not appear to have stated to the court what kind of judgment he desired, or upon what ground he asked it. He did not ask for a judgment of nonsuit nor did he allege any *grounds* for asking for a judgment. A motion is an application to the court for relief of some kind, and it should state what relief is desired, and, usually it should set forth the grounds for asking for the relief demanded. When a defendant moves for judgment of nonsuit, he must state the reasons for asking such relief, and if he fails to do so, the trial court should refuse to consider the motion, or deny it: 14 Ency. Pl. & Pr. 118; *Ferguson* v. *Ingle,* 38 Or. 43, 44 (62 Pac. 760); *Meier* v. *Northern Pacific Ry. Co.,* 51 Or. 69, 75 (93 Pac. 691); *Flynn* v. *Dougherty,* 91 Cal. 669, 671 (27 Pac. 1080, 14 L. R. A. 230).

14 Ency. Pl. & Pr., page 118, says:

''The objection or objections on which the motion is founded should be stated specifically, so that the court may readily see that the motion should be granted. Not only must a party assign a ground for his motion, but he must assign *all* the grounds for the relief sought which he may have, and objections known to exist and not raised at the time of the motion may be deemed waived.''

In *Flynn* v. *Dougherty,* 91 Cal. 669, 671 (27 Pac. 1080, 14 L. R. A. 230), the court says:

''The rule is well settled here that a nonsuit cannot stand unless the ground upon which it is supported was called to the attention of the court and the plaintiffs at the time the motion was made.''

In *Ferguson* v. *Ingle,* 38 Or. 43, 44 (62 Pac. 760), the court says:

"Considering these questions in inverse order, the rule is well settled that the motion of an adverse party for a nonsuit must specify the grounds therefor, and, unless it does so, an appellate court will not review the action of the trial court in denying the motion."

In *Meier* v. *Northern Pacific Ry. Co.*, 51 Or. 69, 75 (93 Pac. 690), the court says:

"The rule is well settled that the motion of an adverse party for a nonsuit must specify the grounds therefor, and, unless it does so, an appellate court will not review the action of the trial court in denying the motion," etc.

The reason for the enforcement of this rule is to advise the trial court and the plaintiff of the grounds upon which the mover will rely and to prevent suprise. The record in this case states only that, at the conclusion of the plaintiffs' evidence in chief, "the defendant moved for judgment." Such a statement is insufficient, and raises no question for review in this court.

3, 4. The defendant contends, also, that the trial court "erred" in sustaining the objection of the plaintiffs to the introduction of any testimony concerning the note or indebtedness set out in the third separate answer or defense of the defendant. The answer or defense referred to is the supposed "counterclaim," based upon a promissory note for $18,170. The answer sets out the facts of said "counterclaim" as follows:

"That afterward, to wit, during the months of May or June, 1909, and while said close corporation was composed entirely of the plaintiffs herein, and on the 2d day of June, 1909, a promissory note in the sum of $18,170 was executed in favor of and delivered to the defendant herein, and after the maturity of said note, which was prior to October 26, 1909, the sum of $3,385 was paid thereon by the makers thereof only, and there

now remains due from the plaintiffs herein to the defendant the sum of $14,785.''

The said allegation does not state *who* executed said promissory note. It is fatally defective in that respect. A counterclaim upon a promissory note should be pleaded with the same particularity that would be required in a complaint based upon the same note: *Le Clare* v. *Thibault,* 41 Or. 601, 608 (69 Pac. 552); *Watson* v. *McLench,* 57 Or. 446 (110 Pac. 482; 19 Ency. Pl. & Pr. 752, 753).

In 19 Ency. Pl. & Pr. 752, 753, the rule as to pleading a counterclaim is stated thus:

"A plea or answer in which the defendant asserts a * * counterclaim * * must contain the substantial requisites of a declaration or complaint, and must allege facts which would be legally sufficient to entitle the defendant to recover in an action instituted by him against the plaintiff."

The same volume on page 755 says:

"When the right to assert a setoff or counterclaim depends wholly upon statute, it is not sufficient that the defendant alleges a good cause of action in his favor against the plaintiff, *but he must allege facts which bring his claim within the provisions of the statute,*" etc.

The allegation as to the pretended counterclaim states merely that:

"A promissory note in the sum of $18,170 was executed in favor of and delivered to the defendant herein."

There is no averment as to who executed this note. The statement that a certain amount is due from the plaintiffs to the defendant is a mere conclusion of law. The defect in said allegation is not a mere irregularity.

A necessary allegation is wholly omitted, and the defect is fatal to that part of the answer.

5-7. The defendant contends that the court erred in not allowing evidence to be admitted concerning the note or indebtedness set up in the third separate answer or defense, it being the supposed counterclaim on said note for $18,170, discussed *supra*. On page 99 of the transcript of the evidence, counsel for the plaintiff is shown to have objected to any evidence relating to what is termed the third defense by way of counterclaim, for the reason that it is not alleged in said supposed counterclaim that said note was executed by one or any or all of the plaintiffs, and for the further reason that a defendant cannot plead a counterclaim to the plaintiffs cause of action, unless he admits the existence of at least a part of the plaintiffs' demand, and the answer in this case denies each and every material allegation of the complaint. The court sustained said objections. The question so objected to referred to said note for $18,170. Said note was never offered in evidence, nor were its contents shown, nor did the defendant make any statement as to what he desired or offered to prove in relation to said note or said counterclaim. The bill of exceptions does not contain a copy or any description of said note, except that it was ''a note for $18,170.'' There is no showing or offer to show who executed it.

When a document is ruled out by the trial court, and the appellant excepts to such ruling, and desires to have it reviewed in the appellate court, it is incumbent on him to make such document or a copy thereof, a part of the bill of exceptions, so that the appellate court can examine it and determine its admissibility. Unless this is done, the appellate court cannot review

the ruling of the trial court rejecting such document: *Craft* v. *Dallas City,* 21 Or. 53, 55 (27 Pac. 163).

Where objection to a question is sustained by the trial court and the witness is not permitted to answer, in order that the ruling of the court thereon may be reviewed, it is necessary for the party asking such question to state and have incorporated into the bill of exceptions what facts he expected to prove by the witness, and, unless he does so, the appellate court cannote review the ruling of the trial court excluding such proposed evidence: *Kelley* v. *Highfield,* 15 Or. 277, 293 (14 Pac. 744).

We hold that said proposed evidence was properly excluded, because the said pretended counterclaim was not properly pleaded, and also that the ruling excluding said promissory note cannot be reviewed for the further reason that it is not set out in the bill of exceptions.

8. The next assignment of error relates to the ruling out of the note for $1,900, pleaded by the defendant as a counterclaim. This appears to be a joint note executed to the defendant by L. C. Hammer, J. E. Murphy, H. G. Luker and H. G. Sonnemann, dater November 10, 1910, and payable on demand. This note is joint only, and J. E. Murphy is one of the makers thereof. He is not one of the plaintiffs, nor is he an assignor of either of the plaintiffs. H. G. Mourer is a plaintiff, but he did not sign said note, nor did his assignor, George C. Mourer, sign it. The demand due the plaintiffs is joint.

Chapter 99 of the Laws of 1911 (Gen. Laws 1911, p. 145), which was in force when the pleadings in this action were filed, describes a counterclaim in part as follows:

"The counterclaim mentioned in Section 73 must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action. * *

"(2) In an action arising on contract, any other cause of action arising also on contract and existing at the commencement of the action," etc.

It is in some instances difficult to determine when an indebtedness may or may not be properly pleaded as a counterclaim.

Bliss on Code Pleading, Section 367, says in part:

"*The counterclaim must be between the same parties.* If it is necessary to bring in other parties, the matter cannot be presented as a counterclaim, but a new action may be commenced," etc.

Professor Pomeroy, in his work on Code Remedies (4 ed.), Section 637, says in part:

"By the decisions which have been reviewed in the foregoing paragraphs, certain specific rules are clearly established for all the states whose codes may be classed in either of the two general groups mentioned at the commencement of this section. First, when the defendants in an action are *joint* contractors and are sued as such, no counterclaim can be made available which consists of a demand in favor of one or some of them. Secondly, when the defendants in an action are *jointly* and *severally* liable, although sued jointly, a counterclaim, consisting of a demand in favor of one or some of them, may, if otherwise without objection, be interposed. * * Fifthly, when two or more persons have a *joint* right of action, and unite as plaintiffs to enforce the same, a counterclaim cannot be admitted against *one or some* of them in favor of any or all of the defendants."

34 Cyc., pages 729, 730, says:

"In accordance with the rules above stated, a separate demand against one of plaintiffs cannot be set off

against a joint demand due all of plaintiffs, nor can defendant set off a demand against less than all of several joint plaintiffs; and a claim due from plaintiff and another person jointly is not a subject of setoff in an action by plaintiff alone, nor can such claim be counterclaimed; and where one of the co-obligees in a joint obligation assigns his right therein to the other, who sues thereon, defendant cannot set off a claim against the assigning obligee and another jointly. *In a suit by several plaintiffs for a joint demand, a debt due from one of the plaintiffs and another person, not a party to the suit, jointly, cannot be set off,* but such a claim may be set off by agreement between the parties. A defendant in a suit against him for a debt cannot set off a debt due him and another, the demands not being mutual, nor can defendant avail himself of such debt as a counterclaim," etc.

In *Richmond* v. *Bloch,* 38 Or. 317 (60 Pac. 388), the syllabus is:

"A defendant cannot set off against the judgment against her and her codefendants a judgment that she alone had received in a former action against the plaintiff and another, who was not a party to the last action."

In *Coleman* v. *Elmore* (D. C.), 31 Fed. 391, the syllabus is:

"A cause of action arising on a liability, promise or undertaking of a partnership is a joint one only; and under Section 72 of the Code of Civil Procedure, in an action thereon against the members of the firm, one of the defendants cannot maintain a counterclaim arising on a cause of action existing in his own favor."

The promissory note, pleaded as a counterclaim, is a joint and not a several obligation. It was executed to the defendant, but it was not signed by either of the plaintiffs. It was signed by L. C. Hammer, J. E. Murphy, H. G. Luker and H. G. Sonnemann. J. E. Mur-

phy, one of the makers of said note, is not a party to this action, nor was he ever interested in the contract which is the basis of this action. H. G. Mourer, one of the plaintiffs, did not sign said note, nor did his assignor, George C. Mourer. The defendant has no right of action on said note against H. G. Mourer or his assignor. It has no right of action on said note against either of the plaintiffs; but some of their assignors are liable thereon. The defendant had no right of action against the plaintiff Mourer, or his assignor, because neither of them signed said note. As said note was joint only, the defendant could not legally maintain an action thereon without making J. E. Murphy, one of the joint makers thereof, a party. He is not a party to this action, nor was he at any time interested in the contract upon which this action is based. The statute provides that the counterclaim mentioned in Section 73, L. O. L., must be one existing in favor of a defendant and against a plaintiff *between whom a several judgment might be had in the action.* The defendant could not have maintained an action against either of the plaintiffs on said promissory note. We conclude that the said supposed counterclaim lacks mutuality, and that it is not a counterclaim within the meaning of the statute, and that the trial court properly excluded it.

9. The answer of the defendant denied *entirely the demand of the plaintiffs,* or that it owed them anything whatever, and then attempted to plead two supposed counterclaims. It was the settled rule in this state, when the pleadings were filed in this case, that a defendant could not legally plead a counterclaim, unless he, by his answer, admitted at least a part of the plaintiffs' demand: See *Le Clare* v. *Thibault,* 41 Or. 601 (69 Pac. 552).

10. The legislative assembly in 1913 (Laws 1913, p. 312), amended Section 74, L. O. L., relating to counterclaims, by adding thereto the following proviso:

"*That the defendant shall not be required* to admit in his answer any liability or indebtedness to the plaintiff in order to be permitted to plead a counterclaim."

The language, "that the defendant shall not be required to admit," seems to indicate an intention on the part of the lawmaker that said provision should operate prospectively and apply only to answers filed after it should take effect. We hold that to be the effect of said amendment. It took effect on June 3, 1913, and the answer was filed May 14, 1913. The said amendment does not apply to the answer in this case. The facts stated in the answer, relating to said promissory note for $1,900, do not constitute a counterclaim, and the trial court did not err in excluding it.

11. The defendant contends, also, that the court below erred in allowing interest to the plaintiffs on the $6,875.43 due them, from March 4, 1910, at the rate of 6 per cent per annum. The findings show that the plaintiffs and their assignors sold for the defendant 6,033 shares of the defendant's capital stock for $10 per share, and that under the contract as modified they were to pay the proceeds thereof to the defendant, and that the defendant was to pay them as commissions for making said sales $3 per share for every share of stock sold. It appears, also, from the findings, that prior to March 4, 1910, all of said stock was sold, and, that, on and prior to that date, they turned over to the defendant all of the proceeds of said sales of stock, amounting to $60,330 in cash and notes. The notes were payable to the defendant, and it examined them and accepted them and the cash in full payment for said stock. The findings show that, on March 4, 1910, said cash and

notes were accepted by the defendant as cash, and that the balance of said commissions then unpaid, amounting to $6,875.43, ''became and was earned and was due and payable *on the maturity date of said notes,* but the payment of said notes was not a condition upon which the commissions earned were to be paid,'' and ''that all of the notes in these findings referred to, which were turned over to the defendant herein and accepted by it, *have matured.''* The substance of the findings as to the payment of the commissions is that they ''became due and payable at the maturity date'' of the said notes that were taken for the purchase price of the stock sold. In other words, the commissions were owing on March 4, 1910, but they were not due or payable at that date, and they did not become due and payable until said notes *matured.* The findings do not state when said notes became due and payable, but it is found thereby *''that all of the* notes in these findings referred to, which were turned over to the defendant herein and accepted by it, *have matured.''* Hence, when said findings were made, all of said notes had matured and said commissions were then due and payable.

There was no agreement to pay interest on said commissions, and hence the plaintiffs' right to interest depends upon the statute. Section 6028, L. O. L., is as follows:

''*The rate of interest in this state shall be 6 per centum per annum, and no more, on all moneys after the same become due;* on judgments and decrees for the payment of money; or money received to the use of another and retained beyond a reasonable time without the owner's consent, express or implied, or on money due upon the settlement of *matured accounts.* from the day the balance is ascertained; on money due or to become due where there is a contract to pay interest and no rate specified; but on contracts, interest up to the

rate of 10 per centum per annum may be charged by express agreement of the parties, and no more.''

The adjustment made by the parties on March 4, 1910, as shown by the findings was not a settlement of *matured accounts.* The findings show that the account for commissions was not then due or *matured.* The first sentence of the statute quoted *supra* applies to the facts of this case, and interest on said commissions began to run only from the time the commissions became due and payable, and they did not become due and payable until said promissory notes *matured.* The findings show that said notes matured before the making of said findings, but the exact date of the maturity thereof is not stated. We are bound by the said findings, and they are to be construed as the special verdict of a jury.

We conclude, therefore, that the plaintiffs are entitled to interest on said sum of $6,873.43 at the rate of 6 per centum per annum only from the date of the filing of said findings, and not from March 4, 1910, and that the trial court erred in allowing interest on said commissions from March 4, 1910. We find no merit in the other points contended for by the appellants.

The judgment of the court below is modified, and this cause is remanded to the court below, with directions to enter a judgment in favor of the plaintiffs and against the defendant for the said sum of $6,873.43, with interest on said sum at the rate of 6 per centum per annum from the date of the filing of said findings (and stating said date), and costs and disbursements in the court below, in accordance with the terms of this opinion.        MODIFIED.   REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.