Argued on the merits May 25, modified June 15, rehearing denied September 7, 1915.

## WILLIAMS *v.* PACIFIC SURETY COMPANY.

### (146 Pac. 147; 149 Pac. 524.)

**Appeal and Error—Abstract—Insufficiency—Remedy.**

1. Jurisdiction of an appeal having been obtained by the filing of a transcript, if respondent considers the abstract filed by appellant improper or unfair, his remedy is to file such an additional abstract as he deems necessary to a full understanding of the questions involved, as provided by Supreme Court Rule 7 (56 Or. 616, 117 Pac. x).

**Appeal and Error—Bill of Exceptions—Abstract—Diminution of Record.**

2. Where an abstract of the record on appeal refers to a bill of exceptions and states that a transcript of the testimony is made a

part thereof, but neither has been filed in the Supreme Court, a diminution of the record may be suggested and proper correction made on application if counsel cannot stipulate the facts desired as authorized by Supreme Court rule 40 (56 Or. 629, 117 Pac. xiv.)

### Evidence—Materiality—Admissibility.

3. Where the time when papers were executed was in issue, the papers themselves are properly received in evidence.

### Evidence—Construction.

4. Where a contract provided that both parties should procure and deliver to the other, as security, bonds in the sum of $25,000, or, in lieu thereof, other security satisfactory to the parties, mortgages given by plaintiff instead of a surety bond should be received in evidence showing the way in which the parties construed the contract.

### Principal and Surety—Action on Bond—Evidence.

5. Where the seller of a sawmill agreed to deliver to the purchaser a certain number of sawlogs, and executed a bond to secure performance, it was proper, in a suit on the bond, to show that the sawmill was of much less value than the amount paid, for the excess was the consideration for the log contract.

### Principal and Surety—Actions—Defenses.

6. As a surety is only entitled to notice of his principal's default within a reasonable time, it cannot, as a matter of law, be held that plaintiff's failure to give notice for about a month was so unreasonable as to discharge the surety.

[As to what operates as release of surety, see note in 28 Am. St. Rep. 691.]

### Assignments—Evidence—Sufficiency.

7. In an action against a surety on a logging contract, evidence *held* to support a finding that the contract, which had been assigned, was reassigned to plaintiff before action was brought.

### Principal and Surety—Actions—Defenses.

8. A corporate surety cannot complain of technical breaches of conditions in the bond, unless such breaches cause financial loss.

[As to discharge of surety on fidelity bond by failure of employer to notify surety of employee's delinquency, see note in Ann. Cas. 1912D, 1286.]

### Logs and Logging—Damages—Measure.

9. Where a logging contract was breached, plaintiff's measure of damages is the difference between the contract price and the price he would have to pay for logs at the point of delivery, or, if none could be obtained there, the price of logs at the nearest point, plus the cost of transportation, notwithstanding that price would have been too high for the profitable manufacture of lumber.

### Damages—Interest—Allowance—Unliquidated Damages.

10. In an action on a surety bond for unliquidated damages, interest cannot be allowed.

From Multnomah: HENRY E. McGINN, Judge.

This is an action by F. F. Williams against the Pacific Surety Company, a corporation, in which judgment was rendered in favor of plaintiff, and defendant appeals. Respondent files motion to dismiss appeal.

MOTION DENIED.

For the motion there was a brief submitted over the names of *Messrs. Platt & Platt* and *Mr. J. O. Bailey.*

*Contra,* there was a brief over the names of *Mr. Thomas H. Crawford* and *Messrs. Wilbur, Spencer & Beckett.*

In Banc.   Opinion PER CURIAM.

The respondent's counsel move to dismiss this appeal on the ground that the abstract does not contain so much of the record of the trial of the cause as is necessary intelligently to present the questions to be decided. Within proper time a transcript on appeal and an abstract were filed with the clerk of this court. The transcript contains certified copies of the verdict, judgment, notice of appeal, undertaking therefor, and the service of the two latter as evidenced by indorsement noted thereon. The abstract sets forth what appear to be copies of the pleadings, verdict, judgment, motion for a new trial, order denying the same, and assignment of alleged errors. The specifications of error consist in admitting, over objection and exception, testimony, giving the questions and answers in most instances, and in others the substance of the evidence received, instructing the jury as complained of, setting out parts of the charge, refusing to instruct as requested, quoting the language desired

to be given, and the denial of the motion for a new trial.

1. Jurisdiction of the appeal was obtained by the filing of the transcript, and, if the respondent's counsel considered the abstract improper or unfair, such additional abstract as they deemed necessary to a full understanding of the questions involved might have been filed: Rule 7 (56 Or. 616, 117 Pac. x).

2. The abstract of record refers to a bill of exceptions, and also states that a transcript of the testimony is made a part thereof, but neither has been filed in this court.  If a diminution of the record is desired, such correction can be made upon proper application, if counsel cannot stipulate the facts desired: Rule 40 (56 Or. 629, 117 Pac. xiv).

The motion to dismiss the appeal is denied.

MOTION DENIED.

---

Modified June 15, rehearing denied September 7, 1915.

ON THE MERITS.

(149 Pac. 524.)

In Banc.    Statement by MR. JUSTICE BENSON.

This action was commenced in January, 1911, and by it plaintiff seeks to recover damages for breach of a contract to furnish logs to the sawmill located at Glendale, Oregon, then owned by plaintiff and defendant Ford. This is the third appeal. The issues, so far as they are of interest in this discussion, are briefly as follows: On August 17, 1910, plaintiff and defendant Ford purchased a sawmill, certain personal property and a small tract of land to be used in con-

nection therewith, from the defendant Oregon-Idaho Company, and at the same time entered into a contract with such company whereby the latter was to deliver to the mill a total of 200,000,000 feet of sawlogs of the quality and at the times mentioned in the contract. This agreement also contained the following clause:

"It is further understood and agreed that both parties to this contract shall procure and deliver to the other party, as security for the faithful performance of the respective covenants of this agreement, bonds in the sum of twenty-five thousand dollars ($25,000) conditioned upon the faithful performance of such covenants and agreements and with good and sufficient sureties, or, in lieu thereof, other security satisfactory to the parties who are to receive the same."

Pursuant to this provision, the defendant Oregon-Idaho Company gave to plaintiff and defendant Ford a bond in the following form:

"Home Office, San Francisco, California.

"Know all men by these presents: That the Oregon-Idaho Company, a corporation, organized and existing under and by virtue of the laws of the State of Oregon (hereinafter called the 'principal') and the Pacific Surety Company, a corporation, organized and existing under the laws of the State of California, and whose principal office is located in San Francisco, California (hereinafter called the 'surety'), are held and firmly bound unto A. H. Ford and F. F. Williams (hereinafter called the 'owner') in the full and just sum of twenty-five thousand and 00/100 ($25,000.00) dollars, lawful money of the United States of America, to the payment of which sum of money, well and truly to be made, the said 'principal' binds himself, his heirs, executors and administrators, and the said 'surety' binds itself, its successors and assigns, jointly and severally, firmly by these presents.

"Dated this 1st day of August, A. D. 1910."

The plaintiff did not deliver or tender any bond, but made a cash payment of $10,000 on the purchase price of the mill and other property and gave a mortgage thereon for $15,000, the balance of such purchase price. The Oregon-Idaho Company breached the contract by failing to deliver the logs at the time and in the quantities agreed upon, and on December 12, 1910, was declared an involuntary bankrupt by the United States District Court. Thereupon this action was brought upon the bond above set out. The other defendants having defaulted, the Pacific Surety Company filed its answer, in which, among other things, it pleaded affirmatively that the plaintiff had forfeited its right to recover by failure to execute and deliver the bond provided for in the logging contract and by refusing to pay more than $3.50 per thousand for certain of the logs delivered, whereas the contract called for a uniform price of $7 per thousand; that they further violated the terms of the bond by assigning their interest in the logging contract to the Cow Creek Mill Company; that plaintiff also failed to immediately notify the surety of the neglect on the part of the Oregon-Idaho Company to supply logs according to the terms of the contract, and that, at all times since the execution of the contract and bond in controversy, the state of the lumber market in Oregon has been such that the cost of manufacturing sawlogs into lumber and placing the same upon the market, together with the payment of $7 per thousand feet for logs at plaintiff's sawmill, has been largely in excess of any market price obtainable for such lumber, and that therefore plaintiff has not been substantially damaged by the alleged breach of the contract. Plaintiff's reply consists of denials and the allegation that,

if the logging contract had ever been assigned, it has been reassigned to plaintiff and Ford and that plaintiff and Ford own practically all of the stock in the Cow Creek Mill Company. From a judgment for plaintiff, defendant Pacific Surety Company appeals.

MODIFIED.   REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Thomas H. Crawford* and *Messrs. Wilbur, Spencer & Beckett,* with oral arguments by *Mr. Crawford* and *Mr. Schuyler C. Spencer.*

For respondent there was a brief over the names of *Mr. J. O. Bailey* and *Messrs. Platt & Platt,* with oral arguments by *Mr. Bailey* and *Mr. Robert Treat Platt.*

MR. JUSTICE BENSON delivered the opinion of the court.

3, 4. Defendant's first contention is that the trial court erred in admitting in evidence the deed from the Oregon-Idaho Company to Ford & Williams, the bond in suit, and the escrow agreement with which they were deposited with the Security Savings & Trust Company about the 1st of August, 1910, and also the note and mortgage for the unpaid portion of the price of the mill property. This contention, however, is untenable. There is a clear-cut issue in the pleadings as to whether the contract, bond, deed and mortgage were executed and delivered on August 1st, or August 17th, and these exhibits were relevant and proper evidence thereon. A broader justification for the ruling of the trial court is found in the fact that the escrow agreement contains evidence tending to show the interpretation put upon the logging contract by the parties thereto in regard to the giving of a bond, "or, in lieu

thereof, other security satisfactory to the parties who are to receive the same." In the case of *City Messenger & Delivery Co.* v. *Postal Telegraph Co.,* this court, speaking by Mr. Justice BEAN, says:

"There is no more certain way of finding out what the contracting parties meant than to ascertain what they have actually done in carrying out the contract. By so doing we learn what construction the parties themselves have placed upon the terms of their stipulation": *City Messenger & Delivery Co.* v. *Postal Telegraph Co.,* 74 Or. 433 (145 Pac. 657, at page 660), and cases there cited.

The parol testimony of plaintiff in relation to the acceptance of the cash payment and the note secured by mortgage, being specifically accepted as satisfactory security in lieu of a bond, was properly admitted upon the same theory.

5. Defendant complains that the court erred in admitting evidence tending to show that the actual value of the mill property did not exceed $9,100, and that the remainder of the purchase price was in reality a part of the consideration for the logging contract. We think that this evidence was properly admitted for the purpose of showing what portion of the $25,000 was actually a consideration for mill property and what part thereof was in fact a consideration for something else: 2 Devlin on Real Estate (3 ed.), 822, 823; *Scoggin* v. *Schloath,* 15 Or. 383 (15 Pac. 635).

6. We next consider the contention that plaintiff's case fails because he did not immediately notify defendant of the continuing breaches of the logging contract. It appears from the evidence that the papers were taken from escrow about the 17th of August, and Williams & Ford then began making repairs on the mill, while the Oregon-Idaho Company was making

preparations for active logging. On August 21st plaintiff notified the logging company that he was ready to receive logs, and the delivery thereof was begun about the middle of September; the last delivery being made about the 1st of October. Plaintiff notified the surety company of the failure to deliver logs about the 10th of October. Under the evidence, we think that it was a question for the jury to answer as to whether or not notice was given within a reasonable time. In the case of *Bross* v. *McNicholas,* 66 Or. 47 (133 Pac. 784), this court, by Mr. Justice McNARY, says:

"However, be the interim eight days or one day, all the plaintiff was required to do was to notify the surety company of the breach of the contract by the principal with due diligence and within a reasonable time after being apprised thereof. Whether that was done was a question solely for the jury to determine."

7. We next consider the assignment of the logging contract and the bond upon which this action is based. The plaintiff testifies that on November 7, 1910, the contract was assigned to the Cow Creek Mill Company for collection, but that it was reassigned to himself and Ford prior to the commencement of this action. He also testifies that this reassignment was confirmed by a written reassignment after the action was begun. Defendant insists that the written evidence of the retransfer ought to outweigh the parol testimony of the plaintiff, but that was a matter for the jury to decide, and they evidently found that the reassignment was made before the commencement of this action.

8. The next subject for consideration is the statement of the trial court involved in a number of the instructions given to the jury, to the effect that the defendant cannot complain of breaches in the condi-

tions of the bond by plaintiff and escape liability thereunder, unless, by such violations of its terms, the defendant has suffered financial loss.   The great weight of authority supports the doctrine announced by this court in the case of *Bross* v. *McNicholas,* 66 Or. 47 (133 Pac. 784), in which the following language is used:

"But, in this day and age of corporate sureties, when the burden is lightened by the payment of adequate premiums, and their final liabilities ofttimes secured by counter indemnity, the strictness of the old rule is relaxed, and the modern day surety company must show some injury done before they can be absolved from the contracts which they clamor to execute": *Baglin* v. *Title Guaranty Co.* (C. C.), 166 Fed. 356; *Leiter* v. *Dwyer Plumbing Co.,* 66 Or. 474, at page 482 (133 Pac. 1180).

In the latter this court, speaking by Mr. Justice BEAN, says:

"In order for the surety company to escape responsibility, it should appear that such company has been prejudiced by a breach of the contract.   The breach must not have been merely technical, but a substantial one, working a pecuniary disadvantage to the surety company, or depriving it of some protection or privilege reserved in the bond."

It is needless to multiply citations.   The instructions complained of are a correct exposition of the law.

9. We come now to the question of the measure of damages.   It appears from the evidence that at Glendale, where plaintiff's mill was located, there was no available supply upon which to draw when the Oregon-Idaho Company failed to deliver logs according to its contract.   There is also evidence tending to prove that the nearest available market for the purchase of

such logs was at Cottage Grove, or at Leona. The court instructed the jury as follows:

"So then you come to the question of damages. Has there been in this case a breach of the contract on the part of the Oregon-Idaho Company, and, if you determine there has been, then what is the damage which Mr. Williams is entitled to recover in this case? He is entitled to recover the difference between what these logs would cost him, if the Oregon-Idaho Company had carried out their contract, delivered in the pond at the mill at Glendale, and what he would have had to pay for logs at the time he wanted them during the continuance of this contract, at Glendale—the reasonable price at Glendale. And, if these logs could not be obtained at Glendale, then at the nearest available point, added to that, transportation to Glendale. That is the measure of damages in the case—the difference between what he would have gotten them for, during the life of this contract, and what he would have had to pay for them, if he had gone out into the market and purchased them at Glendale."

Defendant contends that neither Cottage Grove nor Leona was an "available" market under the evidence, for the reason that the cost of transportation from any of these points was prohibitive, and that logs so purchased could not have been manufactured at a profit. In answer to the suggestion, we need only to say that several witnesses testified that these were available markets, and we think the court's instruction was correct.

10. Finally, we come to the question of interest upon the judgment. The jury returned a verdict in favor of plaintiff and defendant Ford in the following form:

"We, the jury duly impaneled to try the above-entitled cause, find in favor of plaintiff and A. H. Ford, and against the defendant Pacific Surety Company, and assess their damages in the sum of $25,000

and interest from October 1, 1910, at 6 per cent per annum.''

And on the same day the court entered judgment thereon for the sum of $31,202.17, being the amount of said $25,000, with interest to that date, November 19, 1914, computed at 6 per cent.   There is no controversy about the nature of this action.   It is for unliquidated damages, and the rule is well settled in this state that interest cannot be recovered thereon: *Hawley* v. *Dawson,* 16 Or. 348 (18 Pac. 592); *Pengra* v. *Wheeler,* 24 Or. 532 (34 Pac. 354, 21 L. R. A. 726); *Smith* v. *Turner,* 33 Or. 381 (54 Pac. 166).   The court erred in giving judgment for interest.

The judgment of the lower court must therefore be modified to the extent of eliminating the amount of interest computed prior to the date thereof.   In all things else it is affirmed.

MODIFIED.   REHEARING DENIED.

MR. JUSTICE BURNETT dissenting.