## NEW YORK ALASKA GOLD DREDGING CO. v. WALBRIDGE.
### No. 5796.

Circuit Court of Appeals, Ninth Circuit.
Feb. 17, 1930.

200

Herman Weinberger, of San Francisco, Cal., Harry E. Pratt, of Fairbanks, Alaska, and R. E. Robertson, of Juneau, Alaska, for appellant.

M. C. Sloss and L. S. Ackerman, both of San Francisco, Cal., and John A. Clark, of Fairbanks, Alaska, for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

This is an action brought by the appellee to recover from the appellant moneys loaned by him to the appellant, and also to recover compensation at the rate of $600 per month from April 1, 1922, to the 5th of January, 1928, as salary as superintendent and general manager of the appellant. The principal question in the case is with relation to the unpaid salary. Appellant contends that in 1923 a new agreement was affected between the parties by which the salary ceased until March, 1925, when another agreement was entered into fixing the salary at $300 per month with an agreement to pay $300 more if and when the appellant company was upon a dividend-paying basis.

The appellee bases his right to salary upon a resolution of the board of directors of the appellant corporation adopted on March 21, 1922, as follows: "Upon motion duly made and seconded, it was ordered to pay Lester B. Walbridge, as General Manager, a salary of $7,200 per year, said salary to be paid in installments of $600.00 per month or in such other installments as the directors may determine, said salary to accrue from

April 1st, 1922, and to continue until cancelled by action of the Board of Directors."

At the trial, after both parties had submitted their evidence upon the points in controversy, the appellee made a motion for directed verdict for the full amount claimed in his complaint, less credits admittedly due by him to the corporation. This motion was granted by the court upon the theory that the contract of employment was established by the aforesaid resolution, and that there was no evidence sufficient to show a change in contract and that the appellee had acted upon the resolution and was either actively engaged in the duties of general manager during the entire period covered by the alleged contract or was at all times thereafter ready and able and willing to perform the terms of his said contract. The appellant claims, on the other hand, that a parol contract of employment had been entered into before the meeting of the board of directors on March 21, 1922, and that the resolution of that date was merely an authorization from the board of directors to the officers of the company for the payment of such salary as it might accrue. In either view of the matter the real question involved here is as to the alteration of the contract of employment, as neither the fact of employment in the first instance, nor the amount of compensation then agreed upon, is in dispute. That question we will now consider.

There is much evidence as to the dealings of the appellee with the various officers of the appellant corporation and with the members of the board of directors from which it might be inferred by the jury, as contended by the appellant, that from and after March 1, 1923, and until March 1, 1925, it was agreed by the appellee and the said officers that he should receive no salary at all during that period. The evidence certainly would justify the conclusion that during that period the appellee was not to go to Alaska and supervise the mining operations there as he had theretofore done, but on the contrary they should be supervised there by another engineer and that appellee should remain in New York. As to whether or not he did anything at all for and on behalf of the corporation during that period the evidence is conflicting. There is evidence which would justify the conclusion that the appellee, Walbridge, went to Alaska during that period under an agreement with certain officers of the corporation that he should receive no salary during that period, and that still later an agreement was reached with reference to his

employment, evidenced by correspondence between appellee and the secretary and treasurer of the corporation, under which the appellee was to receive $300 per month cash and be credited with $300 in addition, per month, to be paid later when the company had the funds. Whether or not the payment was also contingent upon the company's getting on a dividend paying basis is one of the points in controversy. Although this evidence was before the court and jury, appellee's motion for directed verdict was evidently granted, on the theory that the resolution of March 21, 1922, constituted a binding contract between the parties; that according to the terms of this resolution appellee's salary could only be changed and the terms of employment altered by a resolution of the board of directors duly and regularly passed; and that as no such resolution was shown by the minutes of the corporation or proved to have been duly adopted by the board of directors while sitting as such, there was no basis on which the jury could infer that the original agreement had been altered or changed. We think that the trial court was in error in this ruling. The corporation could not by the resolution of its board of directors deprive itself thereafter of the power to act through its officers in the usual and proper manner. A contract so to do would be unauthorized and unenforceable. It is true, as contended by the appellee, that in so important a matter as employment of a general manager and superintendent the board of directors of the corporation should act. It does not follow that the appellee, a large stockholder and also the general manager of the appellant corporation, could not alter an agreement theretofore entered into by a subsequent agreement between himself on the one hand, and on the other hand representatives or officers purporting to act on behalf of the corporation. It would be strange indeed if the appellee, after having made an agreement with the secretary and treasurer of the corporation, purporting to act on its behalf, and also with the individual members of the board of directors, purporting to act for the corporation, that his services as active manager of the mining operations of the company should then cease, and after also agreeing that another employee should assume those duties, and be paid therefor, that then, on the sole ground that the new contract was not authorized or ratified by the board of directors, he should nevertheless be held to be entitled to recover compensation for the very duties he had by his original contract agreed to perform, and by the supplemental oral

agreement had agreed not to perform, and which in pursuance of the later agreement he had failed to perform, and which had in fact been performed by another as agreed, thus requiring the corporation of which he was general manager to twice pay for the service appellee agreed to perform. This cannot be. See Miller & Co. v. Woolsey, 128 A. 540, 3 N. J. Misc. R. 381.

The testimony is that these subsequent arrangements were discussed in meetings of the board of directors, and that the members of the board, as well as the appellee, acted upon the theory that the agreements thus informally arrived at were effective between the parties. The appellee, who had regularly received his salary during the year 1922, after the arrangement made with the secretary and treasurer and the members of the board of directors, received no further salary and made no claim for salary during the period. When he first returned to Alaska, there is evidence to the effect that he did so under an express understanding with some of the officers of the corporation that he would not claim salary for the period that he was in Alaska, and later, when he finally returned to Alaska to again act as general manager of the corporation, there is evidence to justify the conclusion that it was under an agreement with officers of the corporation which postponed at least half his salary to some future date, or made that half of it wholly contingent upon the success of the corporation.

We think the question as to whether or not the original contract between the parties was modified by the subsequent agreement, express or implied between the parties, should have been left to the jury under proper instructions; that the resolution of March 21, 1922, did not have the effect of in any wise limiting the power of the corporation or its officers to deal with the appellee regarding the terms of his employment and compensation therefor.

In view of the conclusion to which we have arrived, it is unnecessary to discuss most of the other assignments of error relied upon by the appellant. There is practically no dispute between the parties as to the amounts due the respective parties other than the controverted items of salary. The appellee, however, presents one point in regard to the case which is worthy of consideration. As to the items of salary alleged to have been postponed by the alleged agreement with reference to the deferred installments of $300 per month of salary, the appellee claims that the plea in abatement as to this item cannot be considered for the reason that such plea was waived in the trial court. In order to support this contention on this appeal, a suggestion for the diminution of the record was made by the appellee, and copies of the original pleadings and orders of the court in regard thereto were presented in support of the motion. The contention is that the appellant, by filing a general demurrer to the entire complaint, waived its plea in abatement as to the items in question; but it appears from the record thus presented that during the proceedings in the trial court the judge ordered that the plea of abatement be incorporated in the second amended answer upon which the case was tried. This was, in effect, a ruling that the plea in abatement would be considered when the case was tried and that it was not waived by the conduct of the appellant and it was so considered. With reference to the contention that thereafter the plea was again waived by filing an answer which set up both plea in abatement and one in bar, it should be pointed out that the complaint does not segregate the items of salary. No plea in abatement was made with reference to any items of salary other than the salary for the months wherein, according to the allegations of the defendant, 50 per cent. of the salary was postponed and is not yet due. As to these items no plea in bar was offered in the second amended complaint. So that, while the plea in abatement is joined with the plea in bar, the pleas are as to two different portions of the claim of the appellee. There was therefore no waiver, particularly as that practice conformed to the directions of the trial court. We think it therefore unnecessary to determine whether or not these pleadings can properly be brought here upon or in pursuance of a motion for diminution of the record in the absence of a bill of exceptions incorporating them into the record, and in the absence of an exception taken by the appellee to the rulings of the court. The case was tried upon the theory that all the issues set up in the answer were before the court for consideration and no claim was made at the trial that the plea in abatement was waived; such point should not be considered for the first time on appeal.

The trial court in these actions allowed interest upon the items of money loaned from the date of the loan and upon the items of salary from the date they accrued. Appellant contends that under the laws of Alaska this allowance was unauthorized. As the case must be retried, we give consideration

thereto for the guidance of the trial court upon new trial.

Appellant cites as authority for its position the decision of this court in Valentine v. Quackenbush, 239 F. 832, 835, wherein this court, basing its conclusion upon the decisions of the Supreme Court of the state of Oregon, Richardson v. Investment Co., 66 Or. 353, 133 P. 773; Williams v. Pacific Surety Co., 77 Or. 210, 146 P. 147, 149 P. 524; Sargent v. American Bank & Tr. Co., 80 Or. 16, 154 P. 759, 156 P. 431, held that the plaintiff was not entitled to interest upon his claim for money due as contractor's fees upon a building contract upon a "cost plus a fixed fee" basis, under section 684, Compiled Laws of Alaska, before its amendment in 1913 (Session Laws of Alaska for 1913, c. 17, p. 26). That this decision was based upon the terms of section 684, supra, before its amendment, is apparent from the following statement of the court therein, to wit: "This statute is in substance exactly like section 3587, Hill's Annotated Laws of Oregon, and was evidently taken from the laws of Oregon." Before the adoption of the amendment of 1913 by the Alaska Legislature, section 684, Compiled Laws of Alaska, was identical with the provisions of 2 Hill's Ann. Laws Or. 1892 (section 3587), both in language and in punctuation, but it was not after that amendment. This court there adopted the construction of this legislation by the Supreme Court of the state of Oregon, although the decisions construing the legislation in question were rendered long after Congress enacted this provision of the Compiled Laws of Alaska borrowed from Oregon. In the decision on the rehearing in Sargent v. Am. Bk. & Trust Co., 80 Or. 38, 154 P. 759, 156 P. 431, 432, supra, rendered April 4, 1916, the Supreme Court of Oregon detailed the history of this section of the Oregon Code. It appears therefrom that the law as first enacted in 1862 was in the following form: "That the rate of interest in this state shall be ten per centum per annum, and no more, on all moneys, after the same becomes due on judgments and decrees, for the payment of money; on money received to the use of another, and retained beyond a reasonable time, without the owner's consent, expressed or implied, or on money due upon the settlement of matured accounts, from the day the ballance is ascertained; on money due or to become due, where there is a contract to pay interest, and no rate specified. But on contracts, interest at the rate of one per centum per month, may be charged, by express agreement of the parties, and no more."

That in 1866, in Deady's Compilation of the Laws of Oregon, an additional semicolon was inserted after the phrase "payment of money" where it first appears in the sentence; later, in Lord's Oregon Laws, another semicolon was inserted after the phrase "on all monies after the same becomes due" where it first occurs in the sentence, and a period after the word "specified" is replaced by a semicolon. The court, in speaking of these changes said: "The semicolon which has caused so much confusion first made its appearance in 1880, when the statute was amended so as to change the rate of interest; and in the original manuscript, as well as in the printed Session Laws of 1880, at page 17, a semicolon is found in the amended statute after the words 'on all moneys after the same become due,' and this semicolon appears in every subsequent printed compilation, including Hill's Code of 1887, § 3587; Hill's Code of 1892, § 3587; the amendment of 1898 changing the rate of interest, Laws of 1898, p. 16; Bellinger and Cotton's Codes, published in 1902, § 4595; and Lord's Oregon Laws, § 6028. If the statute is construed as it is punctuated in section 6028, L. O. L., it would result in allowing interest: (1) On all moneys after the same becomes due; (2) on judgments and decrees for the payment of money; (3) on money (a) received to the use of another and retained beyond a reasonable time without the owner's consent, expressed or implied, or (b) on money due upon the settlement of matured accounts from the day the balance is ascertained; (4) on money due or to become due where there is a contract to pay interest and no rate specified. If, however, we adopt a construction in accordance with the punctuation found in Deady's Code, then the statute would mean that the rate of interest in this state shall be 6 per centum per annum: (1) On all moneys after the same becomes due on judgments and decrees for the payment of money; (2) on money (a) received to the use of another, and retained beyond a reasonable time, without the owner's consent, expressed or implied, or (b) on money due upon the settlement of matured accounts from the day the balance is ascertained; (3) on money due or to become due where there is a contract to pay. interest, and no rate specified."

In adopting the latter rather than the former construction which the court states would be the true construction based upon the punctuation of the statute as it was pub-

lished in Hill's Code (and as it was later enacted in the Alaskan Code), the court said, among other things:

"And,· finally, the weight of precedent must be added to the reasons given for ignoring the troublesome semicolon and holding that the words 'on all moneys after the same becomes due on judgments and decrees for the payment of money' constitute a single class, and that it is not enough that money be due, but it must be money due on a judgment or decree, or money due because received to the use of another and unreasonably retained, or money due upon the settlement of matured accounts, or money due or to become due on a contract to pay interest, and no rate is specified. In Richardson v. Investment Co., 66 Or. 353, 358, 133 P. 773, 775.

" * * * We therefore hold that the semicolon should be ignored, and the statute construed as though it read: 'On all moneys, after the same becomes due, on judgments and decrees for the payment of money.'"

The court, however, in its opinion, states that in many decisions of that court it had been assumed that interest would run on moneys after the same became due. We quote from that opinion as follows: "Numerous adjudications have assumed that interest would run on 'moneys after the same becomes due,' as in Hammer v. Campbell Gas Burner Co., 74 Or. 126, 144 P. 396; Hawkins v. Investment Co., 38 Or. 544, 554, 64 P. 320; Poppleton v. Jones, 42 Or. 24, 31, 69 P. 919; Baker v. Williams Banking Co., 42 Or. 213, 222, 70 P. 711; Savage v. Salem Mills Co., 48 Or. 1, 25, 85 P. 69, 10 Ann. Cas. 1065; Baker County v. Huntington, 48 Or. 593, 603, 87 P. 1036, 89 P. 144. But an examination of those cases will show that in every instance the opinion was based upon an uncontroverted assumption."

It would appear then that at the time Congress enacted the Compiled Laws of Alaska based upon the Oregon Laws, it had been assumed by the bench and bar of Oregon that the Oregon law allowed interest upon money due from the date the money became due, and judgments therefor had been repeatedly rendered. This practical construction was in effect adopted by Congress for Alaska. McIntyre v. Kamm, 12 Or. 253, 7 P. 27. The decisions of the Supreme Court of Oregon after the enactment of section 684 of the Alaskan Code are not authoritative in the interpretation of the Alaska Code. Stutsman v. Wallace, 142 U. S. 293, 312, 12 S. Ct. 227, 35 L. Ed. 1018. Nor are those

decisions persuasive after a change in the language of the statute either when originally adopted or when subsequently amended. 25 R. C. L. pp. 1069, 1073, §§ 294, 295.

In citing Valentine v. ·Quackenbush, supra, appellant calls attention to the fact that the contract involved in that case was entered into after the amendment of 1913 (Laws 1913, c. 17) to section 684, Comp. Laws of Alaska; but that fact was not called to the attention of the court, and the decision deals with and construes the law before the amendment. This is not only apparent from the face of the opinion itself as above noted, but an examination of the briefs·in the case show that the amended statute was not called to the attention of the court. The claim of the appellant in that case was that the accounts between the contractor and the owner were mutual accounts and that they were not settled until the time the decree was rendered, and for that reason should bear interest from that date under section 684, A. .C. L., supra. The decision, however, was rendered upon another basis, namely, that the law of Alaska as construed by the Oregon court, from which the section is borrowed, did not permit interest upon plaintiff's claim for money due on a contract until judgment was rendered thereon. That decision was in no sense an interpretation of the amended section of 1913, and in so far as that decision may have weight in determining the proper interpretation of the amended law we are inclined to disregard it, because the law so construed is out of harmony with the decisions and statute law of most of the states of the Union.

On this subject the Supreme Court of the United States, in 1848, in Curtis v. Innerarity, 6 How. (47 U. S.) 146, 154, 12 L. Ed. 380, speaking through Justice Grier, said: "It is a dictate of natural justice, and the law of every civilized country, that a man is bound in equity, not only to perform his engagements, but also to repair all the damages that accrue naturally from their breach. Hence, every nation, whether governed by the civil or common law, has established a certain common measure of reparation for the detention of money not paid according to contract, which is usually calculated at a certain and legal rate of interest. Every one who contracts to pay money on a certain day knows, that, if he fails to fulfil his contract, he must pay the established rate of interest as damages for his non-performance. Hence it may correctly be said, that such is the implied contract of the parties."

It also occurs to us that in the decisions above referred to, construing the Code of Or-

egon as to interest, the phrase "on judgments and decrees" in that section (6028 Lord's Or. Laws) has been given a significance entirely inconsistent with the purpose of the enactment. Interest is generally recognized as the compensation awarded by law for the detention of money after it is due. Where the law allows interest on money due, there is no necessity for making a special provision with reference to judgments and decrees of a court. The apparent reason for including in the enactment section 6028, supra, the clause "on judgments and decrees for the payment of money," was to include judgments and decrees in the provision for interest at 8 per cent. per annum and no more, so that although the parties under that section could agree upon interest of 12 per cent. or less, nevertheless when their claim for the principal sum is reduced to judgment it would thereafter bear interest at the statutory rate of 8 per cent. and no more. It is apparently with this view of the law in mind that the Legislature of Alaska amended the statute in 1913 (Laws 1913, c. 17) by inserting a proviso that where judgments were founded upon written contracts for the payment of interest until paid at a rate greater than 12 per cent., such greater rate, not exceeding 12 per cent., should continue "provided that such interest rate is set forth in the judgment or decree."

It is clear that in the amendment of 1913 the Alaskan Legislature intended to provide: First, for interest at 8 per cent. on all money after the same became due; second, for 8 per cent. on judgments and decrees for the payment of money unless the judgment was based upon contract providing for more than 8 per cent. and not exceeding 12 per cent. when the judgment was to bear interest at the contract rate to be specified in the decree. The balance of the sentence fixes the time when the money becomes due, within the meaning of the first clause of the section.

Judgment reversed.